# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
JOSEPH HILO,                              \*
                                          \*   No. 17-1965V
            Petitioner,                   \*
                                          \*   Special Master Christian J. Moran
                                          \*
v.                                        \*   Filed:  February 27, 2023
                                          \*
SECRETARY OF HEALTH                       \*
AND HUMAN SERVICES,                       \*
                                          \*
            Respondent.                   \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Joseph Hilo, pro se;
Kyle Edward Pozza, United States Dep't of Justice, Washington, D.C., for respondent.

### UNPUBLISHED DECISION DENYING COMPENSATION[1]

  Representing himself, Joseph Hilo alleged a flu vaccine caused him to develop chondrosarcoma in his left arm.  Pet., filed December 18, 2017.  Chondrosarcoma is "a malignant tumor derived from cartilage cells or their precursors…; it occurs predominantly in the pelvis, femur and shoulder girdle in middle-aged to older adults."  <u>Dorland's Illus. Med. Dictionary</u> 33d ed. at 348.  Later, a doctor added a claim regarding frozen shoulder.  The Secretary opposes Mr. Hilo's request for compensation.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website.  This posting will make the decision available to anyone with the internet.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions ordered by the special master will appear in the document posted on the website.

Mr. Hilo has not substantiated his claims with persuasive evidence. Therefore, his case is dismissed.

## Obligation to Submit Medical Records

Congress directed petitioners in the Vaccine Program to submit "relevant medical records" with their petition. 42 U.S.C. § 300aa–11(d). By creating rules governing the processing of cases in the Vaccine Program, the judges of the United States Court of Federal Claims have required petitioners to submit "all available medical records supporting the allegations in the petition." Vaccine Rule 2(c)(2)(A). Special Masters, in turn, expect medical records "from all primary care providers for three years prior to the administration of the vaccine(s) alleged to be causal." Guidelines For Practice Under the National Vaccine Injury Compensation Program, Section II, Chapter 3 ¶ B.1 (Apr. 24, 2020). The Federal Circuit has recognized that medical records are presumptively accurate in recounting contemporaneous events relating to medical treatment. Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

As set forth below, Mr. Hilo has not submitted all potentially useful medical records.[2] These omissions might be due to Mr. Hilo's inexperience with either requesting medical records or litigating claims, or both. Regardless of the reasons, gaps in the record make setting forth exactly what happened to Mr. Hilo difficult. Nevertheless, a preponderance of the evidence supports the following.

### I.  Events in Mr. Hilo's Life

#### A. Events before the Vaccination

Mr. Hilo was born in 1975. An October 4, 2021 letter from a doctor specializing in weight-loss, Andre Giannakopoulos, indicates Mr. Hilo was a patient in the early 2000's. But, no medical records confirm this treatment.

In 2013, Mr. Hilo was seen by a doctor for treatment of diabetes, Dr. Evanov. Mr. Hilo was 6'6" and weighed more than 300 pounds. The past medical history in this 2013 record Dr. Evanov created indicates that Mr. Hilo had surgery

---

[2] Mr. Hilo failed to number his exhibits consecutively in accordance with the electronic case filing procedures in Vaccine Act Cases. See Vaccine Rules Supplement, Section IV, 10(b)(i). As such, the same number was sometimes used twice for some exhibits. In this decision, each exhibit will therefore be identified with its ECF document number, followed with a hyphen and the actual exhibit number that was labeled by Mr. Hilo.

for a sarcoma in his left humerus at the age of nine. ECF 23-3 at 3. A sarcoma is "any of a group of tumors usually arising from connective tissue… Many types have prefixes denoting the type of tissue or structure involved; see *chondrosarcoma*." Dorland's at 1641. This report of an old injury is corroborated in general terms by a 2016 medical record created by Dr. Kenan. There, Dr. Kenan stated that Mr. Hilo had a "longstanding history of a large recurrent persistent osteochondroma involving the entire left proximal humerus." ECF 11-3 at 7. An osteochondroma is "a benign tumor consisting of projecting adult bone capped by cartilage projecting from the lateral contours of endochondral bones." Dorland's at 1326.

Mr. Hilo challenges these accounts in his rebuttal, filed as part of Exhibit 15 on May 10, 2022. ECF 62-15. According to Mr. Hilo, Dr. Kenan wrote "'long-standing' due to being opinionated and a language barrier, not being able to understand me." Id. at 1. He denied that his condition was "long-standing" because a "simple cyst" was removed. Id. In addition, Mr. Hilo maintains "Dr. Evanov mistakenly used the words 'Sarcoma at age 9,' when in fact I told him 'cyst at age 9.'" Id.

While neither Dr. Evanov's September 9, 2013 report nor Dr. Kenan's March 4, 2016 record are contemporaneous accounts of Mr. Hilo's condition around age nine or ten, the histories were given in conjunction with Mr. Hilo seeking medical treatment for chondrosarcoma, left humerus. The records are consistent with each other.

Mr. Hilo's suggestion that two doctors would incorrectly record information stretches credibility. Mr. Hilo contends that "long-standing" is an inaccurate duration of his condition because there was a "removal of [a] simple cyst" "from so long ago." ECF 62-15 at 1. He nonetheless acknowledges it was "at age 9" when he had a cyst, inherently suggesting that it has been a "long-standing" issue since he was in his early 40's when Dr. Kenan noted "long-standing." Furthermore, the distinction between "sarcoma at age 9" and "cyst at age 9" does not bear much weight in Mr. Hilo's case because regardless of whether it is, in fact, "sarcoma" or a "cyst," it is still evidence that tends to favor on a more likely than not basis a finding that Mr. Hilo had some problem in his left arm before the vaccination. The problem was described as a sarcoma or osteochondroma, which are relatively similar. It appears either could be linked to the problem, chondrosarcoma, that Mr. Hilo's petition alleges the 2014 flu vaccine caused. If Mr. Hilo had a problem in his left arm before vaccination, he could not succeed on a claim that the vaccine caused the injury. See Locane v. Sec'y of Health & Hum. Servs., 685 F.3d 1375, 1381 (Fed. Cir. 2012) ("finding that [since] the illness was

3

present before the vaccine was administered, logically, the vaccine could not have caused the illness.").

In any event, the sparse remaining medical records from before the vaccination seem not relevant. For instance, Mr. Hilo was referred for a cardiovascular evaluation (ECF 23-3 at 1, September 9, 2013) and had a brain and cervical spine CT due to trauma (ECF 23-2 at 2-4, January 29, 2014).

### B. Events Starting with the Vaccination

Mr. Hilo received the flu vaccination on November 18, 2014. ECF 11-1. Mr. Hilo alleges this vaccine caused his injuries.

It is possible that Mr. Hilo may have seen his weight-loss doctor, Dr. Giannakopoulos, in November 2014. However, reliable evidence surrounding this visit is lacking as discussed below.

The first appointment after the vaccination for which there is documentation occurred on March 11, 2015. On this date, a chiropractor treated Mr. Hilo for neck and shoulder pain. ECF 11-2 at 2. Mr. Hilo's response was "yes" for a question on the intake form which asks: "Is your condition due to an auto accident or job-related injury?" Id. at 1. However, Mr. Hilo did not provide any information about the context for this injury. See Resp't's Rep., filed Mar. 11, 2019, at 2 n.3. The chiropractor's record contains no information about when the shoulder problem or neck problems started. See ECF 11-2. Mr. Hilo saw this chiropractor usually multiple times per week through July 2016. Id. at 7-8. The entries end on October 14, 2016 with a statement: "as per IME – No Further Care." Id. at 8.

It appears that Mr. Hilo first sought treatment from Dr. Kenan on December 4, 2015. See ECF 11-3 at 6 ("excuse slip," created on February 8, 2016), ECF 23-1 (disability statement mailed on March 21, 2017). However, Mr. Hilo has not submitted a medical record created on December 4, 2015.

This missing record creates a gap in information. Typically, in an initial appointment, doctors memorialize their patients' account of how and when problems began. But, in this case, Mr. Hilo has not provided intake information from December 4, 2015. A later record does provide some potential information about the onset of the problem. On a two-page form regarding a potential disability, a staff member from Dr. Kenan's office indicated that Mr. Hilo's osteochondroma started on December 30, 2014. ECF 23-1 at 1. The basis for this statement of onset was not provided. See Resp't's Status Rep., filed Apr. 2, 2019, at 2 n.2.

4

Dr. Keenan appears to have recommended an operation as Mr. Hilo returned to Dr. Evanov on January 13, 2016 for a presurgical consultation. ECF 23-3 at 4-5. In this context, Mr. Hilo reported left shoulder pain and Dr. Evanov found decreased range of motion. Id. Dr. Evanov's summary was "Uncontrolled Diabetes – cancel OR." Id. at 5. About one month later, Dr. Evanov cleared Mr. Hilo for surgery. Id. at 7 (Feb. 24, 2016).

Mr. Hilo did file other records from Dr. Kenan beginning with an appointment on February 8, 2016. ECF 11-3 at 6-8. A series of records show Dr. Kenan treated Mr. Hilo for osteochondroma. See Resp't's Rep. at 3-4 (summarizing multiple records). Because these records do not help determine whether the flu vaccine harmed Mr. Hilo, the records are not further detailed here.

Some records indicate that Mr. Hilo had orthopedic problems in his left shoulder in October 2021. ECF 53 at 3-4. Although Dr. Randy Cohn created the records, they are contained in material from Dr. Giannakopoulos.

## II.     **Procedural History**

Mr. Hilo initiated this case by filing a petition on December 18, 2017. As mentioned earlier, the petition alleges a November 18, 2014 flu vaccination caused Mr. Hilo's chondrosarcoma.

Approximately one month later, a status conference was held. The Secretary commented that the case may have been filed beyond the period of the statute of limitations (three years) in that Mr. Hilo submitted his petition more than three years after the date of vaccination. In response, Mr. Hilo stated that the onset of his chondrosarcoma was around Christmas in 2017. To document the onset of his injury and to provide accurate information, Mr. Hilo was directed to collect medical records. Order, issued Jan. 18, 2018.

Mr. Hilo submitted a set of six medical records on March 29, 2018. He also represented that he has "filed, to the best of [his] knowledge, all of the records required by 42 U.S.C. § 11(c)." Pet'r's Statement of Completion, filed Mar. 29, 2018.

After reviewing Mr. Hilo's evidence, the Secretary requested that Mr. Hilo provide additional medical records, including medical records from December 4, 2015, and any medical records created within two years before the vaccination. Resp't's Status Rep., filed Oct. 10, 2018. This request was turned into an order. Order, issued Oct. 15, 2018. Mr. Hilo submitted three more exhibits on December

5

18, 2018. The Secretary helpfully proposed to submit a Rule 4 Report to assist in identifying the issues. Resp't's Status Rep., filed Jan. 28, 2019.

The Secretary maintained that Mr. Hilo was not entitled to compensation. Resp't's Rep., filed pursuant to Vaccine Rule 4 on March 11, 2019. The Secretary noted that many medical records appeared to be missing. The Secretary further delineated medical records that Mr. Hilo should obtain. Resp't's Status Rep., filed Apr. 2, 2019.

Approximately six months passed during which time Mr. Hilo did not submit any additional medical records. Thus, a status conference was held on October 9, 2019. Mr. Hilo explained that he was having difficulty obtaining medical records. Accordingly, the undersigned provided an order that Mr. Hilo could give to his doctors to facilitate the process of obtaining medical records. Order, issued Oct. 10, 2019. Mr. Hilo was also alerted that he was likely to be required to submit an expert report to support his claim for compensation. About five months later Mr. Hilo indicated that he could not provide any additional medical records. Pet'r's Resp., filed Mar. 10, 2020.

Mr. Hilo continued to search for a doctor who could assist in his claim for compensation. See, e.g., ECF 41-42. Mr. Hilo submitted a statement from Dr. Giannakopoulos on October 8, 2021.[3]

As discussed below, Dr. Giannakopoulos's October 4, 2021 letter lacked some basic information. To cure these deficiencies, Mr. Hilo was directed to obtain more information. Order, issued Nov. 1, 2021. Mr. Hilo submitted a second letter from Dr. Giannakopoulos on December 13, 2021.[4]

The Secretary addressed the material that Mr. Hilo had submitted after he had filed his report and argued that the material from Dr. Giannakopoulos did not satisfy Mr. Hilo's obligation to present preponderant evidence to support his claim. Resp't's Status Rep., filed Feb. 11, 2022. The Secretary requested that the special master issue an order to show cause why the case should not be dismissed. Id. at 4.

A final status conference was held on March 2, 2022. Mr. Hilo was given another opportunity to submit material to support his claim. Mr. Hilo submitted

---

[3] Mr. Hilo did not assign this material an exhibit number. Consequently, this decision refers to the submission as the "October 4, 2021 letter."

[4] Mr. Hilo did not assign this letter an exhibit number. This decision refers to the submission as the "December 13, 2021 letter."

6

more material on May 10, 2022. ECF 62-15. Following this submission, the parties were advised that the case was submitted for adjudication. Order, issued May 16, 2022.

### III. Standards for Adjudication

A petitioner is required to establish his case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is too high. Andreu v. Sec'y of Health & Hum. Servs., 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing special master's decision that petitioners were not entitled to compensation); see also Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357 (Fed. Cir. 2000); Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

To prove causation-in-fact, petitioners bear a burden "to show by preponderant evidence that the vaccination brought about [the vaccinee's] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005). This theory must be persuasive. Boatmon v. Sec'y of Health & Hum. Servs., 941 F.3d 1351, 1356-57 (Fed. Cir. 2019). In assessing a theory, special masters may look for indicia of reliability. See Moberly, 592 F.3d at 1324.

### IV. Analysis

It appears that the only doctor to connect the flu vaccination to an injury in Mr. Hilo is Dr. Giannakopoulos. As a treating doctor, the views of Dr. Giannakopoulos are entitled to strong consideration. Cappizano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1326 (Fed. Cir. 2006). However, the views of a

treating doctor are not absolute, Snyder v. Sec'y of Health & Hum. Servs., 88 Fed. Cl. 706, 745 n.67 (2009).

The context in which a treating doctor opines about the cause of an injury affects the weight fact-finders give to the opinion. Cf. Vanieken-Ryals v. Office of Pers. Mgmt., 508 F.3d 1034, 1042-43 (Fed. Cir. 2007). For example, whether a doctor was treating the petitioner at the time of vaccination and/or the time of the potential onset of an injury contributes to the value of the opinion. Truett v. Sec'y of Health & Hum. Servs., No. 17-1772V, 2022 WL 17348386, at *7, *17 (Fed. Cl. Spec. Mstr. Nov. 1, 2022); Frette on behalf of N.F. v. Sec'y of Health & Hum. Servs., No. 14-1105V, 2017 WL 7421013, at *12, *15 (Fed. Cl. Spec. Mstr. Dec. 29, 2017). Another factor is the qualification of the treating doctor. Baron v. Sec'y of Health & Hum. Servs., No. 14-341V, 2019 WL 2273484, at *17 (Fed. Cl. Spec. Mstr. Mar. 18, 2019).

As to whether Dr. Giannakopoulos treated Mr. Hilo around the time of his November 18, 2014 flu vaccination, the record is murky. Although Mr. Hilo was directed to file records created two years before the vaccination, Orders issued Feb. 15, 2018; Oct. 15, 2018; Apr. 2, 2019; Oct. 10, 2019; Mr. Hilo has not filed any medical records from Dr. Giannakopoulos around this critical time. On the other hand, Dr. Giannakopoulos stated he saw Mr. Hilo "at the end of Nov. 2014." December 13, 2021 letter.

The chronology Dr. Giannakopoulos presented in this letter is inconsistent with other information. Dr. Giannakopoulos stated that he referred Mr. Hilo to an unnamed primary care doctor and then to "Orthopedic, Dr. Samuel Kenan, in Dec. of 2014." Id. If the primary care provider to whom Dr. Giannakopoulos is referring is Dr. Evanov, then the earliest medical record from Dr. Evanov about a shoulder injury is from January 13, 2016. ECF 23-3 at 4-5. According to Dr. Evanov, the purpose of the visit was to screen Mr. Hilo for an operation Dr. Kenan recommended. Dr. Evanov's record does not refer to Dr. Giannakopoulos. Similarly, the earliest appointment with Dr. Kenan could have been in December *2015*. ECF 11-3 at 6. But again, the December 4, 2015 record is missing. Even if Dr. Kenan first saw Mr. Hilo on December 4, 2015, that visit would be approximately one year after Dr. Giannakopoulos said he referred Mr. Hilo to him.

Other errors in Dr. Giannakopoulos's materials are found in his October 4, 2021 letter. There, Dr. Giannakopoulos asserted that Mr. Hilo's left arm injury led him to gaining weight, "which has predisposed him to medical problems related to obesity including diabetes mellitus type II." However, a 2013 record from Dr. Evanov shows that Mr. Hilo was already suffering from diabetes. ECF 23-3 at 2.

Mr. Hilo recognizes that Dr. Giannakopoulos was "unable to recover previous notes and records, due to moving his practice to a new location and also now, switching over to a new computer program." Pet'r's Rebuttal at 1.

Apart from these questions about Dr. Giannakopoulos's representations of Mr. Hilo's history, the Secretary has raised an issue about Dr. Giannakopoulos's qualifications. Resp't's Status Rep., filed Feb. 11, 2022, at 3-4. Dr. Giannakopoulos's area of specialization is obesity. ECF 53 at 5-16. As such, his ability to opine reliably about the etiologies of frozen shoulder and chondrosarcoma appears limited. Parks v. Shinseki, 716 F.3d 581, 585 (Fed. Cir. 2013) (discussing a party's right to challenge a medical provider's qualifications).

Lastly, even if these concerns could be set aside, Dr. Giannakopoulos's two letters are not persuasive. Relying upon the Health Resources and Services Administration's statements, Dr. Giannakopoulos indicates a flu vaccine can damage a person's shoulder. October 4, 2021 letter at 1. This assertion is not new. The Vaccine Table shows as much. 42 C.F.R. § 100.3 ¶ XIV.B. But, Mr. Hilo has not established with preponderant evidence that he meets the definition of SIRVA. 42 C.F.R. § 100.3(c)(10).[5] In addition, Dr. Giannakopoulos states that the vaccine-induced shoulder injury resulted in "a low form of bone cancer." December 13, 2021 letter. But, Dr. Giannakopoulos provides no theory or mechanism by which this evolution could take place.

## V. Conclusion

As reflected in his rebuttal, Mr. Hilo is suffering physical pain. For his discomfort and problems, he merits sympathy. However, Congress has reserved compensation through the Vaccine Program to people who can demonstrate a vaccination caused their injury. Mr. Hilo has not met this qualification.

Accordingly, the Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, available through the Court's website.

---

[5] If Mr. Hilo manifested problems in his shoulder within 48 hours of his November 18, 2014 vaccination, then the statute of limitations would have barred claims in his December 18, 2017 petition.

9

**IT IS SO ORDERED.**

*Christian J. Moran*
Christian J. Moran
Special Master